UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

VICKY LONG, et al.,          )
                            )
          Plaintiffs,        )
                            )
v.                          )      No.:   3:09-CV-114
                            )             (VARLAN/GUYTON)
TENNESSEE VALLEY AUTHORITY, et al.,  )
                            )
          Defendants.        )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on Plaintiffs' Emergency Motion for Preliminary Injunction (the "Emergency Motion") [Doc. 3], filed on March 17, 2009. Plaintiffs' Emergency Motion requests that the Court issue an emergency preliminary injunction regarding the response and remedial activities by defendants Tennessee Valley Authority, *et al.* ("TVA") following the December 22, 2008 coal ash spill in Roane County, Tennessee. TVA has filed a response in opposition [Doc. 49], and plaintiffs have filed a reply [Doc. 64]. The Court held a hearing on the Emergency Motion on April 29, 2009.

On May 11, 2009, the United States Environmental Protection Agency (the "EPA") and TVA entered into an Administrative Order and Agreement on Consent, pursuant to Sections 104(a), 106(a), and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9604(a), 9606(a), 9607 (the

"EPA Order") [Doc. 79-1].[1]  The EPA Order pertains to present and future response, removal, and remedial activities concerning the coal ash spill.  After the entry of the EPA Order, the Court ordered and directed plaintiffs to show cause why their Emergency Motion should not be denied as moot [Doc. 101].  Plaintiffs filed a response and a supplemental response to the Court's show cause order [Docs. 139, 140] and TVA filed a response and a supplemental response to plaintiffs' responses [Docs. 143, 182].

The Court has carefully reviewed the parties' briefs, affidavits, and supporting documents, as well as considered the arguments of counsel presented at the hearing, the subsequent briefs, and the parties' briefs in response to the show cause order.  For the reasons set forth herein, the Court hereby **DENIES as moot** plaintiffs' Emergency Motion and **DENIES** plaintiffs' arguments as to whether the Emergency Motion should be denied as moot.

## I.  Relevant Facts and Procedural History

This civil action arises out of the December 22, 2008 failure of a coal ash containment dike at TVA's Kingston Fossil Fuel Plant ("KIF") in Roane County, Tennessee.  The containment dike retained a pond used to dispose of coal ash sludge produced at KIF.  This coal ash sludge was created by the burning of coal at KIF's coal-fired electricity generation plant.  As a result of the dike failure, approximately 5.4 million cubic yards of coal ash sludge spilled from the 84-acre containment pond to an adjacent area of about 300 acres,

---

[1]The Administrative Order and Agreement on Consent, *In re TVA Kingston Fossil Fuel Plan Release Site, Roane County, Tennessee*, *Tennessee Valley Authority*, No. CERCLA-04-2009-3766 (U.S. EPA Region 4) [Doc. 79-1].

consisting of primarily the Watts Bar Reservoir, the Clinch and Emory Rivers, and government and privately owned shoreline properties.

Immediately following the failure, TVA undertook various spill response efforts, conducted in conjunction with the EPA and the Tetra Tech EM Inc., Superfund Technical Assessment and Response Team ("Tetra Tech START") [*See* Doc. 49-1, pp. 1-7; Doc. 79-1, pp. 5-8]. As requested by the EPA, from December 22, 2008, through January 10, 2009, Tetra Tech START provided technical assistance during TVA's initial emergency response activities at the site of the spill [*See id.*]. On January 11, 2009, the EPA terminated the "emergency phase" of the incident and "transfer[red] the lead federal role to TVA."[2]

By memorandum on April 1, 2009, Tom Kilgore, TVA's President and Chief Executive Officer, directed Anda A. Ray, Senior Vice President of the Office of Environment and Research, to oversee environmental response actions for the spill in accordance with Section 104 of CERCLA,[3] Section 2 of Executive Order No. 12580,[4] and the National Oil

---

[2]*See* U.S. EPA Memorandum from Steve Spurlin to Tim Hope, Jan. 10, 2009 ("Re: Transfer of Federal Lead Agency Authority") [Doc. 49-1, p. 7]. This document provides, in pertinent part, that "TVA and EPA, as well as State and local agencies, have operated in a unified command during the emergency phase of the incident with EPA acting as the lead federal agency for environmental response. A decision was made by the Unified Command that the incident would transition from the emergency phase to long-term recovery effective January 11, 2009 at 1800 hrs." [*Id.*]. Accordingly, on January 11, 2009, the EPA "transfer[red] the lead federal agency role to TVA." [*Id.*].

[3]42 U.S.C. § 9604.

[4]Executive Order No. 12,580, 52 Fed. Reg. 2923, at (e)(1) (Jan. 23, 1987), 3 C.F.R. 193 (1987 Comp.), *superseding* Executive Order No. 12,316, 46 Fed. Reg. 42, 237 (Aug, 20, 1981) (providing for the delegation of presidential authority under CERCLA to the Administrator of the EPA).

3

and Hazardous Substances Pollution Contingency Plan (the "NCP")[5] [Doc. 50-1]. Since this time, TVA has been involved in response activities and has implemented various removal and remedial plans approved by state and federal environmental regulatory agencies, including the Tennessee Department of Environmental Conservation (the "TDEC") and the EPA [*Id.*].[6] In September 2009, Steve McCracken took over from Anda A. Ray as general manager for TVA's environmental response actions for the coal ash spill.[7]

On March 17, 2009, plaintiffs filed their complaint asserting protection and vindication of various rights and seeking damages and declaratory and injunctive relief [*See* Doc. 2]. On the same day, plaintiffs filed their Emergency Motion [Doc. 3] requesting an emergency preliminary injunction halting TVA's response activities.

In the Emergency Motion, plaintiffs request an emergency preliminary injunction in respect to the following: (1) prohibiting TVA from commencing or conducting removal and remedial plans and requiring TVA to immediately prepare and publish appropriate and comprehensive plans regarding removal and abatement of the contamination [Doc. 3, ¶¶ 1-3]; (2) prohibiting TVA from starting and/or continuing any corrective action plan before submitting an environmental impact study in accordance with the National Environmental

---

[5]The National Oil and Hazardous Substances Pollution Contingency Plan (the "NCP"), promulgated pursuant to 42 U.S.C. § 9605 and codified at 40 C.F.R. §§ 300 *et seq.*

[6]The TDEC and the EPA agreed to a "coordinated oversight approach" regarding the coal ash spill [Doc. 49-1, pp. 22-23].

[7]"Steve McCracken to Manage Kingston Ash Recovery Project," http://www.tva.gov/news/releases/juslep09/mccracken.htm (last visited Nov. 3, 2009).

4

Policy Act (the "NEPA"), 42 U.S.C. §§ 4321 *et seq.* [*Id.*, ¶ 2]; (3) prohibiting TVA from engaging in various actions relating to the clean-up and operation of the KIF plan and surrounding properties [*Id.*, ¶¶ 5-10]; and (4) prohibiting TVA from transporting, storing, or disposing of the coal ash until the completion of further environmental analysis [*Id.*, ¶¶ 11-14, 16]. In support, plaintiffs state that the requested injunctive relief is essential to prevent immediate and irreparable injury and harm [*Id.*, ¶ 17].[8]

TVA responded in opposition, arguing that plaintiffs' Emergency Motion should be denied because this Court lacks subject matter jurisdiction over plaintiffs' requests. Specifically, TVA asserted that because its response activities are under Section 104 of CERCLA, and because plaintiffs' request for a preliminary injunction is a direct challenge to TVA's ongoing removal and remedial activities under CERCLA, Section 113(h) of CERCLA serves as a jurisdictional bar to plaintiffs' requested relief. *See* 42 U.S.C. § 9613(h). Further, and notwithstanding the Court's lack of subject matter jurisdiction, TVA argues that plaintiffs' cannot establish entitlement to a preliminary injunction because plaintiffs have not demonstrated a strong likelihood of success on the merits, have not shown irreparable harm, and the injunction would cause harm to others and the public interest [Doc. 49].

The Court held a hearing on plaintiffs' Emergency Motion on April 29, 2009. On May 11, 2009, TVA filed a notice of entry [Doc. 79] of the EPA Order [Doc. 79-1]. The

_____

[8]*See* Doc. 3 for a full description of the emergency preliminary injunction requested by plaintiffs.

5

EPA Order, entered into between the EPA and TVA on May 11, 2009, provides for the "cooperative implementation of the response actions at the Site [the coal ash spill site and surrounding properties] pursuant to their authorities under [CERCLA], as amended, and the [NCP]." [*Id.*, p. 2].

It appearing to the Court that the EPA Order resolved the issues raised by plaintiffs in their Emergency Motion, the Court issued a show cause order [Doc. 101] directing plaintiffs to show cause why their Emergency Motion should not be denied as moot. Plaintiffs filed a response and a supplemental response [Docs. 139, 140], arguing that the Emergency Motion was not moot because: (1) the EPA Order is invalid and (2) the EPA's delegation of response activities to TVA is improper under the arbitrary and capricious standard of review of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706(2)(A). Plaintiffs also request attorneys' fees and reimbursement of costs as a substantially prevailing party.

TVA filed a response and a supplemental response to plaintiffs' responses [Docs. 143, 182], arguing: (1) that Section 113(h) of CERCLA remains a jurisdictional bar to plaintiffs' request for an emergency preliminary injunction; (2) that the EPA Order and its designation of TVA as "lead agency" is clear, valid, and statutorily proper; and (3) that the arbitrary and capricious standard of review of the APA is not available because Section 113(h) of CERCLA precludes jurisdiction. Further, TVA asserts that plaintiffs are not entitled to attorneys' fees and reimbursement of costs.

6

It is on these briefs, affidavits, and supporting documents, those pertaining to plaintiffs' Emergency Motion and those pertaining to the Court's show cause order, as well as the arguments of counsel at the April 29, 2009 hearing and the parties' supporting briefs, that the Court now bases its decision.

## II. Analysis

First, the Court will analyze the applicable provisions of CERCLA and whether this Court has subject matter jurisdiction over plaintiffs' request for an emergency preliminary injunction [Doc. 3]. Second, and notwithstanding the Court's determination of whether it has subject matter jurisdiction, the Court will analyze plaintiffs' arguments as to whether the entry of the EPA Order rendered moot plaintiffs' Emergency Motion [Docs. 3, 139, 140].

## A. CERCLA

This case concerns responsive and remedial proceedings under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), codified at 42 U.S.C. §§ 9601 *et seq.* CERCLA, as amended by SARA, provides for a comprehensive statutory scheme for cleaning up hazardous substances. Authority under CERCLA is granted, in large part, to the President of the United States. *See* 42 U.S.C. § 9615. The President has delegated most of this authority to the Administrator of the EPA ("the Administrator").[9] *See*

_____

[9]Within the EPA, the authority to act has been further delegated to the Regional Administrators by EPA Delegation No. 14-14-A and No. 14-14-B, and re-delegated to the Region 4 Superfund Division Director by Regional Delegation No. 14-14-A and No. 14-14-B [Doc. 79-1].

*id.*; Executive Order No. 12,580, 52 Fed. Reg. 2923, at (e)(1) (Jan. 23, 1987), 3 C.F.R. 193 (1987 Comp.), *superseding* Executive Order No. 12,316, 46 Fed. Reg. 42, 237 (Aug, 20, 1981). CERCLA permits the Administrator to undertake direct removal or remedial action "to protect the public health or welfare or the environment" when the Administrator determines that there is an actual or threatened release of a hazardous substance into the environment at a particular site. 42 U.S.C. § 9604(a)(1). Thus, the primary purpose of CERCLA is "the prompt cleanup of hazardous waste sites." *J.V. Peters & Co. v. Adm'r, E.P.A.*, 767 F.2d 263, 264 (6th Cir. 1985) (citation omitted).

Section 113(h) of CERCLA expressly limits the jurisdiction of federal courts to hear certain cases arising under CERCLA. 42 U.S.C. § 9613(h). Specifically, the relevant portion of Section 113(h) provides that:

> No federal court shall have jurisdiction under Federal law . . . to review any challenges to removal or remedial actions selected . . . under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:
>
> (1)     an action under section 9607 of this title to recover response costs or damages or for contribution.
>
> (2)     An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
>
> (3)     An action for reimbursement under section 9606(b)(2) of this title.
>
> (4)     An action under section 9659 of this title (relating to citizen suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9696 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5)     An action under 9696 of this title in which the United States has moved to compel a remedial action.

*Id.*

Thus, the purpose of Section 113(h) is to limit the public's ability to challenge EPA clean-up decisions and bolster CERCLA's goal of granting the EPA "full reign to conduct or mandate uninterrupted clean-ups for the benefit of the environment and the populous." *B.R. MacKay & Sons, Inc. v. United States*, 633 F. Supp. 1290, 1292 (D. Utah 1986); *see also Exxon Corp. v Hunt*, 475 U.S. 355, 359-60 (1986). To this end, most Circuit Courts of Appeal have concluded that Section 113(h) supplies a "blunt withdrawal of federal jurisdiction" to adjudicate pre-enforcement claims brought against any EPA decision to undertake removal or remedial action at a particular hazardous waste site. *North Shore Gas Co. v. E.P.A.*, 930 F.2d 1239, 1244 (7th Cir. 1991).[10]

Under CERCLA, removal actions refer to short-term actions taken to halt any immediate risks posed by hazardous wastes, including such actions as "may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damages to the public health or welfare or to the environment . . . ." 42 U.S.C. § 9601(23). Remedial actions under CERCLA refer to permanent remedies

---

[10]*See, e.g., Hanford Downwinders Coal., Inc. v. Dowdle*, 71 F.3d 1469, 1474 (9th Cir. 1995); *Clinton County Comm'rs v. E.P.A.*, 116 F.3d 1018, 1024 (3d Cir. 1997); *Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control & Ecology*, 999 F.2d 1212, 1218 (8th Cir. 1993); *Alabama v. E.P.A.*, 871 F.2d 1548, 1557 (11th Cir. 1989); *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Pena*, 62 F. Supp. 2d 1, 4 (D.D.C. 1999), *aff'd*, 214 F.3d 1379 (D.C. Cir. 2000).

taken instead of or in addition to removal actions. *Id.* § 9601(24). The term "response actions" refers to both removal and remedial actions. *Id.* § 9601(25).

In determining the appropriate response and remedial actions, the Administrator may "undertake such investigations, monitoring, surveys, testing, and other information gathering" necessary to identify the existence and extent of the release or threat of release, the source and nature of the hazardous substances involved, and the extent of danger to the public and the environment. 42 U.S.C. § 9604(b)(1). The Administrator is also authorized to "undertake such planning, legal, fiscal, economic, engineering, architectural, and other studies or investigations as he may deem necessary or appropriate to plan and direct response actions, to recover the costs thereof, and to enforce the provisions of [CERCLA]." *Id.* Responsive and remedial actions must also be consistent with the administrative procedures set forth in the NCP, 40 C.F.R. §§ 300 *et seq.* The NCP consists of EPA regulations establishing the methods and criteria for determining the appropriate response to the release of hazardous substances. *See* 42 U.S.C. §§ 9604(a), 9605. Before any long-term remedial actions are undertaken, the applicable site will be studied, alternatives examined, and a preferred clean-up remedy selected in accordance with the NCP administrative procedures.

The EPA may respond to the problem directly by implementing responsive and remedial actions itself, or it may seek to compel a third party to undertake such actions. Thus, the Administrator may issue an administrative order directing the responsible parties to take appropriate action. *See* 42 U.S.C. § 9606(a).

10

B.      **The EPA Order**

The EPA Order [Doc. 79-1] in this case, issued pursuant to Sections 104(a), 106(a)

and 107 of CERCLA, provides, in pertinent part:

> [I]n order to ensure that the environmental impacts associated
> with the release are thoroughly assessed and that appropriate
> response actions are taken as necessary to protect public health,
> welfare, or the environment, and to ensure that the response
> actions satisfy all federal as well as state environmental
> requirements . . . TVA and the EPA to enter into this
> Administrative Order and Agreement on Consent . . . providing
> for the cooperative implementation of the response actions at the
> Site pursuant to their authorities under [CERCLA] and the
> [NCP].

[*Id.*, p. 2-3].

Upon review of the EPA Order, it appeared to the Court that the EPA Order resolved

the issues raised by plaintiffs in the Emergency Motion. Specifically, the EPA Order

addressed TVA's assertion that Section 113(h) of CERCLA precluded this Court's subject

matter jurisdiction because the EPA Order explicitly designated that it was proceeding under

Sections 104(a), 106(a), and 107 of CERCLA. Because Section 113(h) of CERCLA

withdraws jurisdiction from federal courts over "any challenges to removal or remedial

actions selected . . . under section 9604 [Section 104 of CERCLA]" and "any order issued

under section 9606(a) [Section 106(a) of CERCLA]," the Court concluded that, if the EPA

Order is valid, the Court would lack subject matter jurisdiction to further consider plaintiffs' request for an emergency preliminary injunction.[11]

Moreover, it appeared to the Court that the EPA Order also addressed the remainder of plaintiffs' assertions, including: (1) that TVA's response activities had commenced in an unsupervised and inadequate manner; (2) that there had been no steps taken to implement short-term and/or long-term removal or remedial plans or environmental assessments; and (3) there had been no plans set forth for gathering public input and comment on proposed response and remedial plans.

The EPA Order sets forth detailed response plans consistent with the objectives and purpose of CERCLA and the NCP. *See* 42 U.S.C. §§ 9604(b), 9605, 9606(a); 40 C.F.R. §§ 300 *et seq*. The EPA Order identifies and describes the initial response actions, or time-critical removal actions, and sets up a framework for determining future longer-term actions, objectives, and remedial actions [Doc. 79-1, p. 10]. The EPA Order also designates or lays out procedures to designate project coordinators, on-scene coordinators, and remedial project managers [*Id.*, p. 9]. Finally, the EPA Order provides schedules, reporting procedures, and explaines the public review process and any access to information as required by applicable laws [*Id.*, pp. 11-22]. While the EPA Order does not set forth detailed plans regarding all response and remedial actions, it contains frameworks for determining more detailed plans

---

[11]The exceptions to this withdrawal of jurisdiction are not applicable in this case and have not been argued by plaintiffs. *See* 42 U.S.C. § 9613(h)(1)-(5).

as work progresses, more information becomes available, and further response activities are implemented.

Notwithstanding the EPA Order, plaintiffs assert that their Emergency Motion is not moot. Plaintiffs acknowledge that the terms and entry of the EPA Order "represent substantial concessions by TVA with respect to Plaintiffs' demands[,]" and that the EPA Order indicates that the EPA has "re-asserted significant oversight over this cleanup."[Doc. 139, p. 8]. However, plaintiffs argue that the EPA Order violates the express provisions of the NCP because it is vague, ambiguous, and improper insofar as the EPA has designated TVA a "lead agency" with "lead agency" responsibilities. Plaintiffs also assert that the EPA's delegation of lead agency responsibilities to TVA is clearly arbitrary and capricious and should be enjoined.

## C.     Subject Matter Jurisdiction Under CERCLA

The Court may not grant a preliminary injunction if it lacks jurisdiction over the claim before it. *See Cooper Indus., Inc. v. E.P.A.*, 775 F. Supp. 1027, 1036 (W.D. Mich. 1991); *City of Alexandria v. Helms*, 728 F.2d 643, 645-46 (4th Cir. 1984). Therefore, the Court must decide the jurisdictional question before evaluating plaintiffs' request for preliminary injunctive relief, as the latter issue is moot if this Court is without jurisdiction.

The EPA Order in this case has been issued pursuant to Sections 104(a), 106(a), and 107 of CERCLA. In their responses to the show cause order, plaintiffs have not submitted additional argument on the issue of this Court's subject matter jurisdiction over a properly issued order by the EPA [*See* Docs 139, 140]. Therefore, because Section 113(h) of

13

CERCLA withdraws from the federal courts jurisdiction to consider a challenge to actions pursuant to these sections of CERCLA, the Court determines that it does not have subject matter jurisdiction to consider plaintiffs' Emergency Motion.

To the extent plaintiffs persist in their argument that TVA's actions violate the National Environmental Policy Act (the "NEPA"), 42 U.S.C. §§ 4321 *et seq.* [Doc. 4], the Court also denies this argument because the Court lacks subject matter jurisdiction. Although courts many generally review NEPA claims under 28 U.S.C. § 1331 and the APA, such review is not available if another statute specifically precludes judicial review. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). Section 113(h) of CERCLA specifically precludes "any challenges" to removal or remedial actions under Section 104 or any order issued under Section 106(a), "not simply those brought under the provisions of CERCLA itself." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 674 (8th Cir. 1998); *see also Schalk v. Reilly*, 900 F.2d 1091, 1097 (7th Cir. 1990); *Alabama*, 871 F.2d at 1560. Accordingly, if plaintiffs continue to assert that their Emergency Motion is not moot because of alleged violations of the NEPA, these claims are also barred by Section 113(h).

## D.    Argument that the EPA Order Violates the NCP

The Court will now address plaintiffs' responses to the Court's show cause order, in which plaintiffs argue that the EPA Order is invalid because it violates the NCP. First, plaintiffs argue that the EPA Order is vague and ambiguous because it does not explicitly identify a lead agency but only delegates lead agency responsibilities to TVA, therefore implicitly designating TVA as the "lead agency." Second, plaintiffs argue that any

14

designation of "lead agency" and delegation of lead agency responsibilities is statutorily

improper and a violation of the NCP because TVA is not a federal agency. Third, plaintiffs

argue that the EPA's delegation of response and remedial activities to TVA is arbitrary and

capricious under the APA. *See* 5 U.S.C. § 706(2)(A).

## 1.    Vague and Ambiguous

After a thorough review of the EPA Order, the Court determines that its designation

of TVA as lead agency is clear and unambiguous. While the EPA Order does not expressly

designate TVA the "lead agency" for the coal ash spill, the it explicitly states that the EPA

"transferred the lead federal agency role to TVA in accordance with Executive Order 12580."

[Doc. 79-1, p. 6]. Also, in light of the detailed objectives, reporting guidelines, short-term

and long-term plans, designations of project coordinators and project managers, and outlines

of procedures to be followed in accordance with EPA procedures, CERCLA, the NCP, and

other applicable laws, the Court determines that the EPA's designation of TVA as lead

agency to oversee and implement these procedures and plans, in conjunction with the EPA,

is clear.[12]

## 2.    Federal Agency Status

Insofar as the EPA Order designates "lead agency" status to TVA and delegates "lead

agency" responsibilities to TVA, plaintiffs argue that this designation and delegation is

---

[12]Plaintiffs acknowledge in their supplemental response to the show cause order that TVA
has been designated and remains the "lead agency" in this matter, yet plaintiffs continue to argue
that such designation is improper [Doc. 140].

15

statutorily improper and in violation of the NCP because TVA is not a federal agency. TVA argues that TVA is a federal agency and therefore its status as lead agency with lead agency responsibilities is proper.[13]

As stated above, the EPA transferred the role of "lead federal agency" to TVA pursuant to the NCP. *See* 40 C.F.R. § 300.5 (explaining the term "lead agency").[14] This Court has previously held that TVA is a federal agency.[15] The Supreme Court of the United States has also recognized TVA's federal agency status. *Ashwander v. TVA*, 297 U.S. 288, 315 (1936) (referring to TVA as "an agency of the Federal Government"). The United States Court of Appeals for the Sixth Circuit has held similarly. *Matheny v. TVA*, 557 F.3d 311, 320 (6th Cir. 2009) (stating that "TVA is a 'wholly-owned corporate agency and instrumentality of the United States'") (quoting *Edwards v. TVA*, 255 F.3d 318, 322-23 (6th

---

[13]A hearing was held on April 29, 2009 on the issue of whether this Court has subject matter jurisdiction over plaintiffs' Emergency Motion [Doc. 3]. Argument at the hearing was taken under advisement and following the hearing, the parties supplied the Court with supplemental briefs on the issue of whether TVA is a federal agency [*See* Docs. 75, 76].

[14]*See* 40 C.F.R. § 300.5 (stating that "[l]ead agency means the agency . . . to plan and implement response actions under the NCP" and "[w]here the release is on, or the sole source of the release is from, any facility or vessel under the jurisdiction, custody, or control of a federal agency, other than the EPA . . . then that agency will be the lead agency for remedial actions and removal actions other than emergencies").

[15]*E.g., Hendricks v. Governor's Taskforce for Marijuana Eradication*, No. 3:05-CV-377, 2007 WL 3396480, at *3 (E.D. Tenn. Nov. 14, 2007) (stating that "TVA is a federal agency and therefore not subject to a § 1983 suit as it is not a state actor"); *Fortner v. TVA*, No. 3:04-CV-363, 2005 WL 2922190, at *2 (E.D. Tenn. Nov. 4, 2005) (stating that "TVA is a corporate agency and instrumentality of the United States"); *Quality Tech. Co. v. Stone & Webster Eng'g Co.*, 745 F. Supp. 1331, 1339 (E.D. Tenn. 1989) (stating that "[a]s has been declared by many courts, the TVA is a federal government corporation–'an agency performing wholly governmental services, and is an instrumentality of the United States'") (citations omitted), *aff'd*, 909 F.2d 1484 (6th Cir. 1990) (table).

Cir. 2001)) (citation omitted).[16]  Congress[17] and the executive branch[18] have also affirmed

TVA's status as a federal agency within its various corporate roles and functions.  Moreover,

employees of TVA are covered by the Civil Service Reform Act (the "CSRA")[19] and the

Federal Employees Compensation Act (the "FECA").[20]  TVA also has the authority to

exercise the power of eminent domain in the name of the United States and to acquire

property deemed necessary to accomplish the purposes of the Tennessee Valley Authority

Act of 1933, codified at 16 U.S.C. §§ 831 *et seq.  See* 16 U.S.C. § 831c(h)-(i).

---

[16]Other Sixth Circuit decisions are in accord.  *E.g., McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 411 n.18 (6th Cir. 2006) (stating that "there is no question that 'TVA is an agency and instrumentality of the United States'"); *Diversified Energy, Inc. v. TVA*, 339 F.3d 437, 444 (6th Cir. 2003) (stating that "TVA, as an agency of the United States, enjoys sovereign immunity unless Congress specifically waives it").

[17]*See* The Tennessee Valley Authority Act of 1933, 16 U.S.C. §§ 831, 831r (denominating TVA as "an instrumentality and agency of the Government of the United States" in the context of giving TVA access to the United States Patent and Trademark Office for the purpose of studying, ascertaining, and copying certain information).  *Compare* 16 U.S.C. § 831c-2 (granting tort immunity to TVA employees), *with* the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694, 102 Stat. 4563 (1988), 28 U.S.C. § 2679(b)-(d) (granting tort immunity to federal agency employees).

[18]*See* 18 C.F.R. § 1300.101 (stating that "[e]mployees of [TVA] are subject to the executive branch-wide standards of ethical conduct at 5 CFR part 2635 . . . .").

[19]*See* The Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 111 (codified in various sections of 5 U.S.C §§ 1101 *et seq.*); *see Alder v. TVA*, 43 F. App'x. 952, 956-57 (6th Cir. 2002) (noting that the CSRA applies to TVA employees).

[20]*See* The Federal Employees Compensation Act, 5 U.S.C. §§ 8101 *et seq.* (the "FECA"); *see Lockhart v. Heede Intern., Inc.*, 445 F. Supp. 28, 30 (D.C. Tenn. 1977) (stating that "[i]t is undisputed that TVA is an agency and instrumentality of the United States and that the benefits of the [FECA] extend to employees of TVA"); *Jones v. TVA*, 948 F.2d 258, 265 (6th Cir. 1991) (stating that, in accordance with the TVA Act, TVA employees who are injured in the course and scope of their TVA employment receive benefits under FECA and such benefits are exclusive and preclude recovery against TVA under state law).

Accordingly, TVA should be designated a federal agency for the purposes of the response and remedial activities described in the EPA Order. The EPA Order's designation of "lead agency" status to TVA and the EPA's delegation of the attendant responsibilities to TVA is not statutorily improper. Thus, plaintiffs' assertion that the EPA Order is invalid insofar as it designates TVA as the "lead agency" is hereby denied.

### 3. Arbitrary and Capricious

Plaintiffs also argue that the EPA's delegation of response and remedial activities to TVA is arbitrary and capricious under the APA. *See* 5 U.S.C. § 706(2)(A). Specifically, plaintiffs argue that the EPA failed to consider all relevant issues when delegating lead agency responsibilities to TVA. In support, plaintiffs offer reports of independent contractors that plaintiffs argue provide "a chilling assessment of TVA's egregious breaches of duty and the public trust" [Doc. 139, pp. 5-7]. Plaintiffs also argue that a report by TVA's Office of the Inspector General (the "OIG") "identifi[es] continuing conduct on the part of TVA which is more reflective of a corporation undertaking damage control than that of a 'lead agency' transparently conducting health-and safety-critical environmental response activities." [Doc. 140, pp. 3, 6].

The APA provides that "[t]he reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Cmtys., Inc. v. Busey*, 956 F.2d 619, 623 (6th Cir. ), *cert. denied*, 506 U.S. 953 (1992) ("agency decisions are set aside only if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law.'"); *Sierra Club v. Slater*, 120 F.3d 623, 632 (6th Cir. 1997) (same). Thus, the APA confers a general cause of action upon persons "'adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. § 702, but withdraws that cause of action to the extent the relevant statute 'preclude[s] judicial review,' 5 U.S.C. § 701(a)(1)." *Block*, 467 U.S. at 345. As has been stated previously in the context of plaintiffs' NEPA claims,[21] the express language of Section 113(h) of CERCLA specifically precludes "any challenges" to removal or remedial actions under Section 104 or any order issued under Section 106 of CERCLA. *Costner*, 153 F.3d at 674. Thus, because Section 113(h) of CERCLA precludes judicial review, plaintiff's arbitrary and capricious claim will not stand and plaintiffs' claim that the EPA's designation of TVA as lead agency is arbitrary and capricious is hereby denied.

## III. Attorneys' Fees

Plaintiffs also request the Court to recognize that plaintiffs' Emergency Motion was the "primary instigation" for the entry of the EPA Order and therefore plaintiffs, as prevailing parties, are entitled to attorneys' fees under CERCLA. Under the section of CERCLA pertaining to citizens suits , section 9659(f), "[t]he court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witnesses fees) to the prevailing party or the substantially prevailing party whenever the court determines such an award is appropriate." 42 U.S.C. § 9650(f).

---

[21]*See* Section II, Part A, Part C.

19

Even assuming plaintiffs' Emergency Motion was the catalyst for the issuance of the EPA Order, plaintiffs did not bring their Emergency Motion as a citizen suit pursuant to section 9650. *See Key Tronic Corp. v. United States*, 511 U.S. 809, 819, n.12 (1994) (stating that, unlike section 9659(f), Section 107 of CERCLA does not provide for the award of private litigants' attorneys' fees associated with bringing a cost recovery action). In fact, plaintiffs did not even bring their Emergency Motion under CERCLA. Moreover, the issuance of the EPA Order does not create a materially altered legal relationships between the parties as is required to make plaintiffs prevailing parties or substantially prevailing parties for the purposes of an attorneys' fee award. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603-04 (2001) (stating that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorneys fees"). Accordingly, the Court declines to award attorneys' fees to plaintiffs.

## IV.    Conclusion

For all the reasons set forth herein, the Court cannot conclude, based on a thorough review of the briefs, affidavits, and supporting documents, that the EPA Order in this case is invalid or that the arbitrary and capricious standard of review demands that the Court order an emergency preliminary injunction. Therefore, given the entry of the EPA Order pursuant to Sections 104(a), 106(a), and 107 of CERCLA, the Court lacks subject matter jurisdiction to consider plaintiffs' Emergency Motion [Doc. 3] and it is hereby **DENIED as moot**.

Plaintiffs' arguments that their Emergency Motion is not moot are also hereby **DENIED** and

plaintiffs shall not be awarded attorneys' fees in this matter.

      IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE