UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| VICKY LONG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:09-CV-114 |
| | ) | (VARLAN/GUYTON) |
| TENNESSEE VALLEY AUTHORITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on the Motion to Dismiss Defendants Kilgore, Petty, Dotson, and Buttram (the "motion to dismiss defendants") [Doc. 80], filed by defendants Tom Kilgore, Harold L. Petty, Vernon J. Dotson, and James C. Buttram (collectively, the "TVA employee defendants"). Plaintiffs Vicki Long, et al. ("plaintiffs") have responded in opposition [Doc. 104; Doc. 105], and the TVA employee defendants have filed a reply and a supporting certification [Doc. 133; Doc. 134].

This civil action is also before the Court on Defendant TVA's Motion to Dismiss Counts X and XI (the NEPA counts) (the "motion to dismiss NEPA counts") [Doc. 88], filed by defendant Tennessee Valley Authority ("TVA"). Plaintiffs have responded in opposition [Doc. 109; Doc. 110], and TVA has filed a reply [Doc. 135]. On February 25, 2010, the

Court directed the parties to file supplemental briefs regarding the NEPA counts.[1] Accordingly, TVA filed a supplemental brief [Doc. 201], as did plaintiffs [Doc. 203].

The Court has reviewed the pending motions [Doc. 80; Doc. 88], the responsive, reply, supporting, and supplemental briefs and documents [Docs. 81, 89, 104, 105, 109, 110, 133, 134, 135, 201, 203], all in light of the relevant law. For the reasons that follow, the TVA employee defendants' motion to dismiss defendants [Doc. 80] shall be granted, and TVA's motion to dismiss the NEPA counts [Doc. 88] shall also be granted.

## I. Relevant Facts and Procedural History

This litigation arises out of the December 22, 2008 failure of a coal ash containment dike at TVA's Kingston Fossil Fuel Plant (the "KIF plant") in Roane County, Tennessee. The containment dike retained a pond used to dispose of coal ash sludge produced at the KIF plant. This coal ash sludge was created by the burning of coal at the KIF plant's coal-fired electricity generation plant. As a result of the dike failure, approximately 5.4 million cubic yards of coal ash sludge spilled from the 84-acre containment pond to an adjacent area of about 300 acres, consisting of primarily the Watts Bar Reservoir, the Clinch and Emory Rivers, and government and privately owned shoreline properties.

---

[1] The Court ordered supplemental briefing regarding the NEPA counts because it appeared that several of the issues may have been resolved by the Court's previous Memorandum Opinion and Order (the "M&O") [Doc. 183] in this case denying plaintiffs' Emergency Motion for Preliminary Injunction [Doc. 3].

On March 17, 2009, plaintiffs filed a twelve-count complaint against TVA, the TVA employee defendants, and two other entity defendants[2] [*see* Doc. 2]. Count I through Count IX assert state law tort claims against all defendants. Count XII asserts a *Bivens* claim against the TVA employee defendants.[3] In the allegations accompanying Count I through Count IX and Count XII, plaintiffs allege that they own property, reside, and/or do business in the area of the coal ash spill and, as a result of the spill, they have suffered personal injuries, property damage, and business losses for which they are seeking monetary damages.

Count X and Count XI are asserted against TVA and defendant Tom Kilgore ("defendant Kilgore") and allege National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*, claims for injunctive relief under the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706(2)(A). Specifically, in Count X, plaintiffs request an injunction precluding TVA "from presently or in the future disposing of coal ash sludge waste and/or other wastes into KIF's facilities, unless and until it prepares and publishes an adequate and complete Environmental Impact Statement ("EIS") for the proposed actions[.]" [Doc. 2, ¶ 221]. Count XI requests an injunction precluding TVA from "engaging in the dredging plan and CAP [Corrective Action Plan] as presently published, unless and until it prepares and

---

[2] The other entity defendants sued are Geosyntec Consultants, Inc. and Parsons Corporation [*see* Doc. 2].

[3] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics ("Bivens")*, 403 U.S. 388 (1971) (holding that a plaintiff may state a claim for an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.)

publishes an adequate and complete [EIS]." [*Id.*, ¶ 227]. Similar injunctive relief is also requested at the end of the complaint [*Id.*, ¶¶ 2-5].

### A.  The Motion to Dismiss Defendants

The TVA employee defendants' motion to dismiss defendants [Doc. 80] is brought pursuant to Federal Rule of Civil Procedure 12(b)(6). In the motion, the TVA employee defendants state that plaintiffs' state law tort claims, Count I through Count IX, are precluded under 16 U.S.C. § 831c-2 and should be dismissed. The TVA employee defendants also request that plaintiffs' NEPA claims, Count X and Count XI, be dismissed as to defendant Kilgore because he is not a proper party to an APA action challenging NEPA compliance. The TVA employee defendants also request that Count XII, the *Bivens* claim, be dismissed because plaintiffs' allegations are insufficient to state a *Bivens* cause of action.

### B.  The Motion to Dismiss NEPA Counts

TVA's motion to dismiss NEPA counts is also brought pursuant to Federal Rule of Civil Procedure 12(b)(6). In the motion, TVA requests that the counts challenging TVA's compliance with NEPA, Count X and Count XI, be dismissed because Section 113(h)[4] of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. ch. 103 ("CERCLA") precludes this Court from exercising jurisdiction over plaintiffs' request for injunctive relief based on noncompliance with NEPA.

---

[4] *See* 42 U.S.C. §§ 9604(a), 9613(h).

## II. Standard of Review

A party may move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). While a complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for his or her entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation fo the elements of a case of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)); *see also Ashcroft v. Iqbal*, — U.S. —, —, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (reaffirming that the *Twombly* standard for determining the sufficiency of a pleading applies to civil actions and is not limited to anti-trust claims); *MacDermid v. Discover Fin. Servs*, 488 F.3d 721, 733 (6th Cir. 2007). Thus, the factual allegations supplied in "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570); *see also Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629-30 (6th Cir. 2009) (stating that the standard for a motion to dismiss is to screen out cases that "while not utterly impossible, are 'implausible'").

**III. Analysis**

The Court will first address Count I through Count IX, plaintiffs' state law tort claims. Next, the Court will address Count XII, plaintiffs' *Bivens* claim. Finally, the Court will address Count X and Count XI, plaintiffs' NEPA claims.

**A. Plaintiffs' State Law Tort Claims: Count I - Count IX**

The TVA employee defendants argue that plaintiffs' state law tort claims are precluded by the Federal Employees Liability Reform and Tort Compensation Act (the "Liability Reform Act"),[5] which is applicable to TVA and its employees. *See and compare* 16 U.S.C. § 831c-2 (2006) (tort immunity of TVA employees) *with* 28 U.S.C. § 2679(b)-(d) (2006) (tort immunity of other federal employees). The provisions of the Liability Reform Act applicable to TVA employees are codified in the Tennessee Valley Authority Act (the "TVA Act"), 16 U.S.C. §§ 831, *et seq.*, and provide that:

> An action against [TVA] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of [TVA] while acting within the course and scope of this office or employment is exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim. Any other civil action or proceeding arising out of or relating to the same subject matter against the employee or his estate is precluded without regard to when the act or omission occurred.

---

[5] Liability Reform Act, Pub. L. No. 100-694, 102 Stat. 4563 (1988).

16 U.S.C. § 831c-2(a)(1). Thus, individuals are precluded from filing non-constitutional tort actions against TVA employees for acts or omissions that occurred within the course and scope of their employment with TVA.[6] *See United States v. Smith*, 499 U.S. 160, 169 (1991).

Quoting plaintiffs' complaint, the TVA employee defendants assert that each TVA employee defendant named in the complaint was "acting within the course and scope of his employment and/or authority" during the period of plaintiffs' allegations [Doc. 81, p. 4 (quoting Doc. 2, ¶¶ 53-56)]. In their response, plaintiffs state that TVA's assertion that the TVA employee defendants were acting within the course and scope of their employment is not enough for purposes of tort immunity. However, plaintiffs also indicate to the Court that in the event TVA files a certification stating that the TVA employee defendants were acting within the course and scope of their employment, plaintiffs will accede to the substitution of TVA in place of the TVA employee defendants as to Count I through Count IX [Doc. 105, pp. 2-4, p. 3 n.1].

Following plaintiffs' response to the motion to dismiss defendants, TVA filed a certification pursuant to 16 U.S.C. § 831c-2(b) [Doc. 134].[7] This certification provides that the TVA employee defendants:

---

[6] This exception from tort liability does not apply to an action against a TVA employee "for money damages for a violation of the Constitution of the United States[,]" in other words, a constitutional tort claim. 16 U.S.C. § 831c-2(a)(2).

[7] "Upon certification by [TVA] that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding heretofore or hereafter commenced on such claim . . . shall be deemed an action against [TVA] pursuant to section 831c(b) of this title and [TVA] shall be substituted as the party defendant." 16 U.S.C. § 831c-2(b)(1).

> [W]ere employees of the TVA and were acting within the scope of their TVA employment at the times of their alleged wrongful conduct which forms the basis of the claims being asserted against them in this action.

[*Id.*]. Accordingly, pursuant to TVA's certification and the Court's analysis of the alleged misconduct, the Court determines that the TVA employee defendants were acting within the course and scope of their employment with TVA during the time period of the alleged wrongful conduct. Thus, because this conduct falls within 16 U.S.C. § 831c-2(a)(1), the TVA employee defendants are immune from plaintiffs' state tort law claims and plaintiffs' exclusive remedy for the alleged wrongful conduct is against TVA. The TVA employee defendants are hereby dismissed from Count I through Count IX.

### B. Plaintiffs' *Bivens* Claim

The TVA employee defendants also assert that Count XII, the *Bivens* claim, should be dismissed because a *Bivens* remedy is not available in this case as a matter of law. Plaintiffs' *Bivens* claim asserts that the TVA employee defendants, acting under color of federal law and in furtherance of policies, customs and/or practices adopted, promulgated and/or enforced by TVA, engaged in conduct that:

> [C]onstituted and/or resulted in violation of the federally protected rights and civil rights of Plaintiffs and those similarly situated, including those rights secured to them by federal statute, the United States Constitution and the Amendments thereto, *e.g.*, their property rights under the 5th Amendment, their privacy rights (including the 4th and 5th Amendments), their due process rights, their rights to be secure in their health, body and persons, and their rights to equal protection of law under the 14th Amendment.

8

[Doc. 2, ¶¶ 228-31]. Plaintiffs assert two theories under which they allege the TVA employee defendants violated their constitutional rights: (1) by interfering with plaintiffs' right to medical treatment, and (2) by affirmative acts which impinged on plaintiffs' constitutional property and liberty rights and directly and indirectly caused the coal ash spill.

Plaintiffs' allegations of constitutional deprivations are for violations of substantive due process. To establish liability for violations of substantive due process in a non-custodial setting, a plaintiff must prove that the government actor either intentionally injured the plaintiff or acted arbitrarily in the constitutional sense. *Upsher v. Grosse Pointe Public Sch. Sys.*, 285 F.3d 448, 453 (6th Cir. 2002).[8] The United States Court of Appeals for the Sixth Circuit has defined arbitrary conduct as conduct "intentionally designed to punish someone – *e.g.*, giving a worker 'a particularly dangerous assignment in retaliation for a political speech . . . or because of his or her gender.'" *Upsher*, 285 F.3d at 453 (quoting *Lewellen v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 34 F.3d 345, 351 (6th Cir. 1994)). Alternatively, the plaintiff must prove "'conscience shocking'" behavior." *Id.* (quoting *Stemler v. City of Florence*, 126 F.3d 856, 869 (6th Cir. 1997)); *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

---

[8] The *Upsher* case involved a claim pursuant to 42 U.S.C. § 1983. *Upsher*, 285 F.3d at 452. A § 1983 claim, which alleges a violation of constitutional rights by state entities, and a *Bivens* claim, which alleges a violation of constitutional rights by individual federal officials, serve legally analogous purposes. Thus, decisions in § 1983 cases are generally applicable to *Bivens* actions. *See Butz v. Economou*, 438 U.S. 478, 484 (1978) (noting that the body of law governing official immunity under § 1983 should apply to *Bivens* type actions); *Ige v. Vogel*, No. 00-1136, 2000 WL 1888611, at *2 (6th Cir. Dec. 19, 2000) ("[Section] 1983 case law applies to *Bivens* actions.").

Plaintiffs' allegations pertaining to the conduct of the TVA employee defendants relate to their alleged roles in contributing to, ignoring, or refusing to address the causes of the dike failure [*see* Doc. 2, ¶¶ 69-104]. Plaintiffs argue, in their response to the motion to dismiss defendants, that the factual allegations contained in the complaint sufficiently state a *Bivens* claim because "the individual Defendants had actual knowledge" of the causes of the dike failure, the failure of the dike was "imminent" due to the TVA employee defendants' wrongful conduct, and because the TVA employee defendants "intentionally misled regulators" and "never advised the proper regulatory authorities or Plaintiffs, despite a duty to do so." [Doc. 105, p. 11].

However, this argument that the TVA employee defendants had actual knowledge, intentionally deceived, or failed to advise plaintiffs does not comport with the allegations in the complaint. The allegations in the complaint do not rise to the level of asserting that the TVA employee defendants either deliberately or intentionally injured all or some of the plaintiffs, acted arbitrarily in conduct directed towards the plaintiffs, or directed their actions toward the plaintiffs in a manner so as to shock the conscience. *See Upsher*, 285 F.3d at 453. Rather, plaintiffs' allegations in the complaint are that the dike failure occurred because of the TVA employee defendants' "failure and refusal . . . to comply . . . with [regulations]" [Doc. 2, ¶ 73], their "very serious failure and breach of professional engineering duties or standards as well as other duties of care owed to the public (including Plaintiff and others similarly situated)" [*Id.*, ¶¶ 87, 91, 96], and because circumstances existed "which Defendants knew or should reasonably have known" [*Id.*, ¶¶ 93, 99, 103] would have led to

the dike failure. Such allegations comport more with tort allegations of breach of duty and failure to follow applicable standards of care then the Sixth Circuit's requirements that a *Bivens* claim must allege a "deliberate decision" or "arbitrary conduct intentionally designed" to affect a plaintiff. *See Upsher*, 285 F.3d at 453-54.

Further, the Court also notes that liability is personal in a *Bivens* claim, based upon each defendant's own constitutional violations. *See Iqbal*, 129 S. Ct. at 1948. While the complaint asserts claims of constitutional violations and individually names the TVA employee defendants in the factual allegations, most of these allegations involve the rote assertion that "defendants, TVA, Mr. Kilgore, . . . (and/or their respective engineers, including, but not limited to, Mr. Petty, Mr. Buttram and/or Mr. Dotson) . . ." acted improperly [*see, e.g.,* Doc. 2, ¶ 71]. What is missing in these repeated assertions are a nexus or relationship in which it can be determined *which* individual TVA employee defendant performed the alleged improper act and *to which* plaintiff or plaintiffs it was intentionally or deliberately designed to affect and did in fact affect.[9] *See Bateman v. United States*, No. 3:08-1186, 2009 WL 2043871, at *5-6 (M.D. Tenn. July 9, 2009).

For instance, in regard to defendant Kilgore, plaintiffs' allegations involve his conduct relating to his supervisory responsibilities as chief executive officer and president of TVA and do not pertain to any particular affirmative or specific act directed toward a particular plaintiff or plaintiffs [*see* Doc. 2, ¶¶ 53, 69-73, 76-81, 84-92, 94-102]. The United States

---

[9] As of the filing of the initial complaint, the number of plaintiffs numbered more than forty [*see* Doc. 2].

11

Supreme Court has clearly stated that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 129 S. Ct. at 1948; *see Morales v. White*, No. 07-2018-B/V, 2007 WL 2426760, at * 3 (W.D. Tenn. Aug. 22, 2007) ("There is no *respondeat superior* liability under § 1983 or *Bivens*") (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Accordingly, because plaintiffs have not alleged specific conduct by defendant Kilgore that violated plaintiffs' constitutional rights, defendant Kilgore cannot be liable for plaintiffs' *Bivens* claim.

Similarly, plaintiffs have not alleged specific facts describing the conduct of the other TVA employee defendants and how any particular plaintiff or plaintiffs was constitutionally harmed by one or more of the individual TVA employee defendants. Rather, plaintiffs have lumped all TVA employee defendants together and asserted that each one had essentially the same role in making the decisions, recommendations, and judgments which ultimately form the basis of the state law tort claims. While these allegations of breached duty or breached standard of care may be sufficient for tort claims, such allegations are not sufficient to state a *Bivens* claim. *See Kesterson v. Moritsugu*, No. 96-5898, 1998 WL 321008, at *4 (6th Cir. June 3, 1998) (affirming the district court's finding that the plaintiff did "not allege personal involvement by the defendants. That is, he did not allege that particular defendants performed the acts that resulted in a deprivation of [plaintiff's] constitutional rights"). In order to state a *Bivens* action against a federal official, a plaintiff must allege that a specific defendant performed a specific act that suffices to state a claim. *See Kesterson*, 1998 WL 321008, at *4. Plaintiffs here have not done so, having alleged neither a specific act on the

part of any individual TVA employee defendant nor how any such act violated any plaintiffs' constitutional rights.

This is particularly true in regard to plaintiffs' assertion that the TVA employee defendants interfered with their right to medical treatment [*see* Doc. 2, ¶¶ 109-11, 232-33]. Plaintiffs argue that they have asserted facts regarding the institution and enforcement of policies by the TVA employee defendants which violated plaintiffs' constitutional right to seek medical treatment, to travel, to get access to health care, in addition to assertions that plaintiffs must be "protected from false arrest and unlawful detention." [*Id.*]. However, a *Bivens* claim requires more. Plaintiffs have not alleged which of the TVA employee defendants violated their constitutional rights in this regard, nor have plaintiffs alleged which plaintiff or plaintiffs suffered injury or injuries and to what extent. Moreover, plaintiffs have not provided factual allegations supporting their *Bivens* claim that the TVA employee defendants made "deliberate decisions" to deprive plaintiffs of constitutional rights or engaged in "arbitrary conduct intentionally designed" to affect a plaintiff or plaintiffs.

Plaintiffs also argue that their *Bivens* claim falls under the "state-created danger" exception. This exception arises out of the Due Process Clause which, except under two limited exceptions, does not "require[] the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Under one exception, recognized in *Deshaney*, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and

general well-being." *Deshaney*, 489 U.S. at 199-200. The second exception, the "state-created danger" exception, recognized by the Sixth Circuit, states that "[w]hen the state 'cause[s] or greatly increase[s] the risk of harm to its citizens . . . through its own affirmative acts,' it has established a 'special danger' and a corresponding duty to protect its citizens from that risk." *Koulta v. Merciez*, 477 F.3d 442, 445 (6th Cir. 2007) (quoting *Kallstorm v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). A plaintiff wanting to bring a claim under the "state-created danger" exception must show: "'(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its action specifically endangered the plaintiff.'" *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)).

Plaintiffs' *Bivens* claim does not fall under this "state-created danger" exception. The exception requires plaintiffs to allege that they were exposed to an act of violence by a third party as a result of an affirmative act by the TVA employee defendants. *See Jones*, 438 F.3d at 696. Plaintiffs here have not done so and acknowledge as such in their responsive brief, asserting that the requirement of a third party in the "state-created danger" exception is a "distinction without difference" and that they need not plead it [Doc. 105, p. 11]. However, plaintiffs do not cite any authority or case law in support of this assertion, and the Court is not aware of any relevant authority in which this circuit or any other circuit has found the

14

third party requirement unnecessary. Accordingly, plaintiffs have failed to adequately plead the "state-created danger" exception and it does not apply to the facts and circumstances of this case. For these reasons, plaintiffs' *Bivens* claim, contained in Count XII, is dismissed in its entirety.

C.     **Plaintiffs' NEPA Counts[10]**

TVA also asserts that the NEPA counts contained in Count X and Count XI of plaintiffs' complaint should be dismissed because this Court is without jurisdiction to review TVA's ongoing CERCLA response actions or to grant the relief requested for the alleged violations of NEPA—an injunction precluding TVA from disposing the coal ash waste and an injunction precluding TVA from engaging in the dredging plan and the CAP.

On May 11, 2009, TVA and the United States Environmental Protection Agency (the "EPA") entered into an Administrative Order and Agreement on Consent, pursuant to Sections 104(a), 106(a) and 107 of CERCLA (the "EPA Order") [Doc. 79-1].[11] *See* 42 U.S.C. §§ 9604(a), 9606(a), 9607. The EPA Order pertains to TVA's present and future

---

[10] In light of the Court's determination regarding the NEPA counts, there is no need to address the argument by the TVA employee defendants that defendant Kilgore must be dismissed because he is not a proper party to an APA action challenging TVA's NEPA compliance [*see* Doc. 80].

[11] The EPA Order provides that "in order to ensure that the environmental impacts associated with the release are thoroughly assessed and that appropriate response actions are taken as necessary to protect public health, welfare, or the environment, and to ensure that the response actions satisfy all federal as well as state environmental requirements . . . TVA and the EPA to enter into this Administrative Order and Agreement on Consent . . . providing for the cooperative implementation of the response actions at the Site pursuant to their authorities under [CERCLA] and the [NCP]." [Doc. 79-1, pp. 2-3].

response, removal, and remedial activities regarding the coal ash spill. As stated in the previous M&O issued by this Court regarding plaintiffs' Emergency Motion, Section 113(h) of CERCLA withdraws jurisdiction from federal courts over "any challenges to removal or remedial actions selected . . . under section 9604 [Section 104 of CERCLA]" and "any order issued under section 9606(a) [Section 106(a) of CERCLA]." [Doc. 183, p. 12 (quoting 42 U.S.C. § 9613(h)]. Further, Section 113(h) of CERCLA precludes "any challenges" to removal or remedial actions under Section 104 of any order issued under Section 106(a), "not simply those brought under the provisions of CERCLA itself." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 674 (8th Cir. 1998); *see also United States v. State of Colorado*, 990 F.2d 1565, 1577 (10th Cir. 1993) (stating that "the plain language of § 9613(h) [Section 113(h) of CERCLA] bars federal courts from exercising jurisdiction, not only under CERCLA, but under *any* federal law to review a challenge to a CERCLA remedial action" (emphasis in original").

In this case, plaintiffs' NEPA counts will necessarily involve a challenge to review TVA's responsive and remedial actions following the issuance of the EPA Order, issued pursuant to Sections 104(a), 106(a) and 107 of CERCLA. Plaintiffs have cited no relevant authority under which plaintiffs' NEPA counts would be exceptions to the withdrawal of jurisdiction in Section 113(h) of CERCLA. Thus, while federal courts may generally review NEPA claims under 28 U.S.C. § 1331 and the APA, such review is not available when Section 113(h) of CERCLA specifically precludes judicial review. Accordingly, the NEPA

counts, contained in Count X and Count XI of plaintiffs' complaint, are dismissed in their entirety because the Court is without jurisdiction to review such challenges.

## IV. Conclusion

For the reasons stated herein, the TVA employee defendants' motion to dismiss defendants [Doc. 80] is hereby **GRANTED** and the TVA employee defendants, Tom Kilgore, Harold L. Petty, Vernon J. Dotson, and James C. Buttram, are **DISMISSED** from plaintiffs' state law tort claims (Count I through Count IX). Plaintiffs' *Bivens* claim (Count XII) is also **DISMISSED** in its entirety. Further, TVA's motion to dismiss NEPA counts [Doc. 88] is hereby **GRANTED** and plaintiffs' NEPA counts (Count X and Count XI) are **DISMISSED** in their entirety.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE